| United States Bankruptcy Court for the Northern District of Illinois, Eastern Division | |
|---|---|
| Miracare Neuro Behavioral Health P.C. | Check if this is an amended filing |
| Case Number: 24-13288 | |

# Plan of Reorganization for Small Business Under Chapter 11 Subchapter V

## Background for Cases Filed Under Subchapter V

### Description and History of the Debtor's Business

The Debtor, Miracare Neuro Behavioral Health P.C. ("Miracare"), is an Illinois corporation which operates three (3) outpatient mental health care facilities in the southwestern suburbs of Chicago. These facilities are located at 11800 S. 75th Ave., 3rd Floor, Palos Heights, IL 60463; 9990 W/ 190th Street Ste C, Mokena, IL. 60448 and 15419 E. 127th Street, Ste. 300, Lemont, IL 60439.

Historically, the mental health care facilities generates annual revenue of around 4.5 million dollars per year. The Debtor employs approximately forty (40) employees and/or independent contractors, many of which are licensed health care professionals. In addition, the Debtor employs support staff to assist in providing its professional services.

In or around 2018, the Debtor was instrumental in the formation of a new entity named Mira Neuro Behavioral Health, LLC ("Mira Neuro"). Mira Neuro was formed to own and operate an in-patient mental health care hospital located at 6775 Prospect Dr., Tinley Park, IL 60477. The Debtor, in large part funded the start-up costs of the hospital facility. The Debtor also guaranteed a substantial portion of the debt incurred in equipping the facility as a mental health care hospital as well as guaranteeing a line of credit with First National Bank of Ottawa to be used in the hospital's daily operations. However, in 2022, because of the delay of insurance carriers in paying over $1,000,000 in receivables to Mira Neuro, the hospital facility was forced to shut down. The hospital ceased operations and could no longer provide in-patient mental health services. As a result, Miracare was unable to service the debt incurred in funding the Mira Neuro hospital facility and lacked the ability to defend against a number of lawsuits which were either filed or threatened by creditors to collect their outstanding indebtedness. Miracare therefore sought bankruptcy protection by filing a voluntary petition for relief on September 9, 2024.

### Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claimants and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to this Plan of Reorganization as

1

Exhibit A.

**Ability to make future plan payments and operate without further reorganization**

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments.

The Plan Proponent has provided projected financial information attached to this Plan of Reorganization as Exhibit B.

The following assumptions are made in the projection of cash flow:

1. The figures contained in the cash flow projections were obtained from the Debtor's historical data as well as it monthly operating reports which were filed in the case.

2. For the time period through March 31, 2028, it is assumed that the Debtor's income and cash flow will remain stable as reflected by historical data and the Debtor's monthly operating reports.

**You should consult with your attorney, accountant or other financial advisor if you have any questions pertaining to the Plan or these projections.**

**Article 1:     Summary**

This Plan of Reorganization (the "Plan") under Chapter 11 of the United States Bankruptcy Code (the "Code") proposes to pay its creditors from monthly income from its business operations.

The Plan provides for payment of one class of secured creditors and one class of general unsecured non-priority claims.  Non-priority unsecured creditors holding allowed claims will receive payment through periodic cash distributions from the Reorganized Debtor if this Plan is approved as consensual.  In the event the Plan is approved as non-consensual distribution of these payments will be made by the Subchapter V Trustee, Neema Varghese.

All creditors should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read these papers carefully and discuss them with your accountant, attorney or financial advisor, if you have one.'**

**Article 2:     Classification of Claims and Interests**

2.      Unclassified Claims:  All allowed claims entitled to priority under §507 (a) of the Code.

2.1     Class 1A -- Secured Claim of the First National Bank of Ottawa secured by receivables, accounts and inventory of the Debtor.

2

2.2    Class 2A – Secured Claim of North Mill Credit Trust secured by an Equipment Financing Agreement of 2011 Key Interior Design Office Buildout.

2.3    Class 2B – Secured Claim of Meridian Equipment Finance, LLC., secured by an Equipment Financing Agreement of Dell Computer Equipment (Collateral has been abandoned by the Creditor).

2.4    Class 2C – Secured Claim of Blue Bridge Financial, Inc., secured by an Equipment Financing Agreement for restaurant equipment, appliances and material.

2.5    Class 2D – Secured Claim NewLane Finance Company, secured by an Equipment Financing Agreement of Dell Computer Equipment.

2.6    Class 2E – Secured Claim of Amur Equipment, secured by an Equipment Financing Agreement of Furniture.

2.7    Class 3 - Allowed General Unsecured Non-Priority Claims

**Article 3:    Treatment of Administrative Expense Claims and Priority Claims**

Unclassified Claims (Not Entitled To Vote On The Plan)

3.1    Administrative Claims (including Fee Claims) – Administrative Claims shall be paid, in full, in cash, on the later of (1) the day prior to the Effective Date OR (2) upon approval by the Bankruptcy Court of such Claims, or (3) on such other terms as agreed upon between the Debtor and the party asserting the Administrative Claim. The only known Administrative Claims are those of Debtor's attorney, David R. Herzog and the Subchapter V Trustee, Neema T Varghese. Administrative shall be paid on the later of (1) Within ninety (90) day from the Effective Date, or (2) upon approval by the Bankruptcy Court of such Claims.

3.2    Priority Claims – Priority Tax Claims entitled to priority pursuant to §507(a) consist of: None.

**Article 4:    Treatment of Claims and Interests Under the Plan**

Unimpaired Classes of Claims

4.1    None

Impaired Classes of Claims (Entitled to Vote on the Plan)

4.2    Class 1A – Secured Claim of First National Bank of Ottawa holds a first priority perfected UCC

3

Security Interest in the Debtors accounts, receivables, equipment and inventory. The value of the collateral securing the indebtedness at the time the Debtor commenced its bankruptcy case was Two Hundred Thirty Thousand Dollars ($230,000)  The Debtor shall pay the $230,000 by making thirty-six (36) equal monthly installment payments of Six Thousand Six Hundred Eighty-Eight and 68/00 ($6,688.68) Dollars which includes interest payments of three percent (3%) per annum on the outstanding balance commencing fifteen (15) days after the Effective date of the Plan. The Plan does not provide for any further distribution to the Class 1A claimant. The Class 1A claimant is impaired under the Plan.

4.3   Class 2A -- Secured Claim of North Mill Credit Trust is secured by a UCC1 financing statement pursuant to a certain Equipment Financing Agreement securing a 2011 Key Interior Design Office Buildout. The executory contract of the Class 1B claimant is rejected and the collateral shall be surrendered to the Claimant. The balance of any deficiency claim shall be treated as a Class 2 Allowed General Unsecured Non-Priority Claim. The Class 1B claimant is impaired under the Plan.

4.4   Class 2B -- Secured Claim of Meridian Equipment Finance, LLC is secured by a UCC1 financing statement pursuant to a certain Equipment Financing Agreement securing Dell Computer Equipment. The executory contract of the Class 1C claimant is rejected and Meridian Equipment Finance, LLC has abandoned its interest in the collateral and has elected to be treated as a Class 3 Allowed General Unsecured Non-Priority Claim. The Class 1C
 claimant is impaired under the Plan.

4.5   Class 2C -- Secured Claim of Blue Bridge Financial Inc., is secured by a UCC1 financing statement pursuant to a certain Equipment Financing Agreement securing restaurant equipment, appliances and material. The executory contract of the Class 1D claimant is rejected and the collateral shall be surrendered to the Claimant. The balance of any deficiency claim shall be treated as a Class 2 Allowed General Unsecured Non-Priority Claim. The Class 1D claimant is impaired under the Plan.

4.6   Class 2D -- Secured Claim of NewLane Finance Company is secured by a UCC1 financing statement pursuant to a certain Equipment Financing Agreement securing Dell Computer Equipment. The executory contract of the Class 1E claimant is rejected and the collateral shall be surrendered to the Claimant. The balance of any deficiency claim shall be treated as a Class 2 Allowed General Unsecured Non-Priority Claim. The Class 1E claimant is impaired under the Plan.

4.7   Class 2E -- Secured Claim of Amur Equipment is secured by a UCC1 financing statement pursuant to a certain Equipment Financing Agreement securing certain Furniture. The executory contract of the Class 1F claimant is rejected and the collateral shall be surrendered to the Claimant. The balance of any deficiency claim shall be treated as a Class 2 Allowed General Unsecured Non-Priority Claim. The Class 1F claimant is impaired under the Plan.

4.8   Class 3 – General Unsecured Non-Priority Claims – General Unsecured Non-Priority Claims aggregate approximately $439,729.57 as set forth on the Allowed Unsecured Non-Priority Claims Register attached to the Plan as Exhibit C.

Allowed Class 3 claims shall be paid $130,000.00 through pro rata distributions of deferred cash payments to holder of allowed Class 4 Claims in twelve (12) quarterly installments of $10,833.33 commencing on March 15, 2025 and thereafter on the 15th of June, September and December with a final distribution no later than December 15, 2028. The quarterly dividends shall be distributed to allowed Class 2 Claims pro rata by the Debtor, if the Plan is consensual, otherwise by the Subchapter V Trustee. Class 2 claimants may be prepaid without penalty or discount. Class 2 claims are impaired under the Plan.

**Article 5:     Allowance and Disallowance of Claims**

5.1    **Disputed claim** – A *disputed claim* is a claim that has not been allowed or disallowed [by a final non-appealable order], and as to which either:

  i. a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or
  ii. no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated

5.2    **Delay of distribution on a disputed claim**

No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.3    **Settlement of disputed claims**

The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Article 6:     Provisions for Executory Contracts and Unexpired Leases**

6.1    **Assumed executory contracts and unexpired leases**
**Loan**

  i. The Debtor assumes, and if applicable assigns, the following executory contracts, and unexpired leases as of the Effective Date: Non-residential lease for the following properties: 11800 S. 75th Ave., 3rd Floor, Palos Heights, IL 60463; 9990 W/ 190th Street Ste C, Mokena, IL. 60448 and 15419 E. 127th Street, Ste. 300, Lemont, IL 60439.

  ii.    Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under section 6.1(a) of this Plan, or that are the subject of a pending motion to assume the executory contract and unexpired leases, and if applicable assign, the Debtor will be conclusively deemed to have rejected all other known or unknown, executory contracts and unexpired leases as of the Effective Date and, in particular, all Class 2 Equipment Financing Agreements and/or Leases are rejected.

5

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.

---

**Article 7:     Means for Implementation of the Plan**

---

7.1    This Plan is self-executing. The Debtor shall not be required to execute any newly created documents to evidence the claims, liens or terms of repayment to the holder of an Allowed Claim.

7.2    Funding - The Plan shall be funded by proceeds from the Estate's available cash, cash equivalents, and proceeds generated from Debtor's business income. The Debtor projects that its cash flow will be sufficient to make the Plan payments.

7.3     As of the Effective Date, and subject to the terms and conditions of the Plan, the Debtor shall be revested with all of his property, subject only to outstanding liens as provided by this Plan. The Debtor shall be entitled to manage its affairs without further order of this Court, subject only to the restrictions set forth in this Plan.

7.4    Distributions for Claims or Interests Allowed as of the Effective Date - Except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims that are Allowed Claims as of the Effective Date shall be made on the Effective Date or as soon thereafter as is practicable. Any distribution to be made on or after the Effective Date pursuant to this Plan shall be deemed as having been made on the Effective Date if such distribution is made after the Effective Date or as soon thereafter as is practicable. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

7.5    The Debtor shall serve as "Disbursing Agent" for all Distributions required by the Plan. In the event the Plan is non-consensual, distributions under the Plan shall be paid by the Subchapter V Trustee, Neema T. Varghese

7.6    Delivery of Distributions in General - Distributions to Holders of Allowed Claims shall be made at the addresses set forth in the Debtor's records unless proofs of claim or transfers of claim filed pursuant to the Bankruptcy Rules supersede such addresses.

7.7    Undeliverable and Unclaimed Distributions - Any funds distributed to the Holders of Allowed Claims that remain unclaimed by such claimants for three (3) months after disbursement will become property of the Debtor. Any claimant failing to claim property distributed pursuant to the Plan will not be able to recoup such property in subsequent distributions and will be deemed barred from any future claim in law or equity. If the distribution to any Holder of an Allowed Claim is returned as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Debtor is notified in writing of such Holder's then current address.

7.8     Means of Cash Payment - Payments of Cash made pursuant to the Plan shall be in U.S. Dollars and shall be made, at the option and in the sole discretion of the Debtor, by (a) checks drawn on or (b) wire transfer from a domestic bank selected by the Debtor.  Cash payments to foreign creditors may be made, at the option of the Debtor, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

## Article 8:     Default Provisions

8.1     Secured Creditors shall retain their liens on and security interests in their respective collateral until the secured part of their claim is paid in full.

8.2     In the event the Debtor fails to comply with any of its obligations under any lease, loan documents and/or the Plan (such failure, a "Default"), any affected creditor shall provide notice of such failure (a "Notice of Default") by sending a written notice to the Debtor, Subchapter V Trustee, and counsel for the Debtor.  Said Notice of Default can be provided via electronic mail, first class mail, or facsimile.  The Debtor's failure to cure the Default set forth in the Notice of Default within 10 business days after receipt of a Notice of Default shall be deemed a "Material Default." Notwithstanding the foregoing, in the event the Default relates to a lapse of insurance and the Debtor fails to cure such insurance Default within two (2) business days after a Secured Creditor sends a Notice of Default, such failure to cure shall also be deemed a "Material Default."

8.3     Upon the occurrence of an uncured Material Default, if the Bankruptcy case is closed, the respective creditor is entitled to exercise all of its lien rights and remedies under any lease, loan documents, Uniform Commercial Code and applicable law, and otherwise seek collection of its outstanding indebtedness, without further Order of the Bankruptcy Court, against both the Debtor and any guarantor. The rights and remedies available to the creditors under their respective leases, loan documents, unless specifically modified by the Plan, shall remain in full force and effect.  Upon the occurrence of an uncured Material Default, if the case remains open, the respective creditor shall be granted relief from the automatic stay by submission of a Motion and an Agreed Order before the Bankruptcy Court.

## Article 9:     General Provisions

9.1     **Definitions and rules of construction**

The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Federal Rule of Bankruptcy Procedure, will have the meaning ascribed thereto in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, as applicable.

   a) "**Administrative Claim**" means a Claim for costs and expenses of administration of the Chapter 11 case Allowed under §§ 503(b), 507(a)(1), 507(b) or, if applicable, § 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary costs and expenses incurred after the Petition Date of

7

preserving the Debtor's Estate and operating the business of the Debtor (such as wages and salaries) and Claims of governmental units for taxes (including tax audit Claims related to tax years commencing after the Petition Date, but excluding Claims relating to tax periods, or portions thereof, ending on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under §§ 330, 331 or 503(b) of the Bankruptcy Code (also defined herein as "Fee Claims") to the extent incurred prior to the Effective Date; (c) all fees and charges assessed against the Debtor' Estate under §1930, chapter 123 of title 28, United States Code; (d) any indebtedness or obligations incurred or assumed by the Debtor in the ordinary course of business after the Petition Date; and (e) Claims under Section 503(b)(9) of the Bankruptcy Code.

b) "**Allowed Claim**" means a Claim: (a) that has been Scheduled by the Debtor in its Schedules, and was not scheduled as disputed, contingent, and has not been supplanted by a later Filed Claim; (b) as to which no objection or request for estimation has been filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court; or (c) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (d) that is Allowed (i) by a Final Order; (e) relating to a rejected executory contract or unexpired lease that is not a Disputed Claim or has been allowed by a Final Order, but only if a Proof of Claim was timely Filed or has otherwise been deemed timely Filed under applicable law; (f) that is allowed pursuant to the terms of the Plan, which shall not, unless otherwise specified herein or by applicable Bankruptcy Court order, for any purposes under the Plan, include interest, penalties, premiums or late charges on such Claim from and after the Petition Date, unless required by §506(b); or (g) that is allowed by an agreement between the Holder of the Claim and the Debtor pursuant to any stipulation or other agreement;

c) "**Bankruptcy Case**" means this case entitled In re Miracare Neuro Behavioral Health, P.C., pending before the United States Bankruptcy Court for the Northern District of Illinois as Case No. 24 - 13266.

d) "**Confirmation Date**" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

e) "**Debtor**" means. Miracare Neuro Behavioral Health, P.C.

f) "**Disputed Claim**" means any Claim, or portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, and as to which the Debtor interposes a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, or any claim otherwise disputed by the Debtor in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order.

g) "**Disputed Claim Amount**" means (a) with respect to contingent or unliquidated Claims, the amount estimated by the Bankruptcy Court for purposes of distributions in respect of such Claim in accordance with §502(c) of the Bankruptcy Code; or (b) the amount set forth in a timely filed proof of claim.

h) "**Effective Date**" means that date fifteen (15) days after the Confirmation Date.

i) "**Order For Relief**" means September 9,2024.

j) "**Petition Date**" means September 9, 2024, the date on which the Petition was filed by the Debtor commencing the Bankruptcy Case.

k) "**Priority Claims**" means a claim that is entitled to priority pursuant to 11 U.S.C. §507(a) of the

    Bankruptcy Code other than an Administrative Claim.

9.2    **Effective Date**

The Effective Date of this Plan is the first business day following the date that is 15 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated.

9.3    **Severability**

    If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.4    **Binding effect**

    The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

9.5    **Captions**

    The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.6    **Controlling effect**

    Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent a Plan Document, or schedule to the Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of Illinois, without giving effect to any principles of conflicts of law of such jurisdiction.

9.7    **Retention of Jurisdiction**

    Pursuant to §§105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Bankruptcy Case and the Plan to the fullest extent permitted by law.

**Article 10:**    **Discharge**

    **Intentionally omitted.**

**Article 11: Other Provisions:  None**

This Plan of Reorganization has been respectfully submitted on this 9th day of December, 2024 by the Debtor.

                                        /s/ *David R Herzog*
                                      One of the Attorneys for the Debtor

David R Herzog
53 West Jackson Blvd., Suite 1442
Chicago, Illinois 60604
(312) 977-1600
drh@dherzoglaw.com